UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:17-cr-00091-JAW-1 |
| | ) | |
| DARIN DOE | ) | |

**ORDER ON SECOND MOTION FOR COMPASSIONATE RELEASE**

A defendant serving one-hundred and twenty months of incarceration for possession of child pornography moves a second time for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The court rejects the defendant's second motion for compassionate release because the 18 U.S.C. § 3553(a) factors counsel against his early release and he failed to present "extraordinary and compelling reasons" for sentence reduction.

**I.    PROCEDURAL BACKGROUND**[1]

On July 12, 2017, Darin Doe waived his right to prosecution by indictment and consented to prosecution by information, *Waiver of Indictment* (ECF No. 1), and the Government brought against Mr. Doe one count of possession of material containing child pornography, an alleged violation of 18 U.S.C. § 2252A(a)(5)(B). *Information* (ECF No. 2). That same day, Mr. Doe appeared before the Court and pleaded guilty to the possession of material containing child pornography charge. *Min. Entry* (ECF No. 8).

---

[1]    The Court discussed the factual background of this case at length in its order on Mr. Doe's first motion for compassionate release issued on January 22, 2021. *See Mot. for Compassionate Release* (ECF No. 39) (*First Compassionate Release Mot.*); *Order* at 10-18 (ECF No. 45) (*First Compassionate Release Order*). The Court assumes the parties' familiarity with the facts underlying this case.

On January 18, 2018, the Court sentenced Mr. Doe to one-hundred and twenty months of incarceration, ten years of supervised release, a $100 special assessment, $5,000 in restitution, and no fine for possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). *Min. Entry* (ECF No. 22); *J.* (ECF No. 27).

On October 21, 2020, Mr. Doe filed his first motion for compassionate release, alleging "numerous, long standing medical difficulties" placed him at elevated risk for contracting and being susceptible to COVID-19 while incarcerated. *First Compassionate Release Mot.* at 1-9. The Government responded in opposition on October 28, 2020, *Resp. in Opp'n* (ECF No. 40), and Mr. Doe replied on November 12, 2020. *Reply Mem. in Support of Pet. for Compassionate Release* (ECF No. 43). On January 22, 2021, the Court dismissed Mr. Doe's first motion for compassionate release without prejudice, concluding that the seriousness of his offense, his history of recidivism, the danger he poses to the public, and the need for general and specific deterrence precluded his early release. *First Compassionate Release Order* at 1-27.

On August 1, 2024, Mr. Doe filed a second motion for compassionate release.[2] *Mot. for Compassionate Release* (ECF No. 47) (*Def.'s Mot.*). On August 22, 2024, the

---

[2]    On August 1, 2024, the Clerk's Office notified Mr. Doe that his motion for compassionate release "contains personal identifiers in violation of Fed. R. Civ. P. 5.2 or Fed. R. Crim. P. 49.1," and informed him that he "may remedy this violation by filing a redacted version of the document . . . along with, a Motion to Seal." *Notice* (ECF No. 48). The Clerk also informed Mr. Doe that "[i]f no action is taken, the unredacted document will remain publicly available." *Id.* Mr. Doe has not responded; thus, "the unredacted [motion for his compassionate release] will remain publicly available." *See id.*

Nonetheless, the Court, sua sponte, has chosen to refer to Mr. Doe's mother by her initials, L.D., in this order. Further, the Court takes care to follow the First Circuit's directive in *United States v. Kravetz*, 706 F.3d 47 (1st Cir. 2013) regarding the right of public access to "judicial records." The *Kravetz* Court instructs that there is a presumption that the common law right of public access applies to "judicial records," which include "materials on which a court relies in determining the litigants' substantive rights." *Id.* at 54, 56 (quoting *In re Providence J.*, 293 F.3d 1, 9-10 (1st Cir. 2002)). The *Kravetz* Court discussed the question of medical information specifically and distinguished between

Government filed its opposition.  *Gov't's Resp. in Opp'n to Def's Mot. for Compassionate Release* (ECF No. 49) (*Gov't's Opp'n*).  On September 23, 2024, Mr. Doe replied.[3]  *Reply to Opp'n for Mot. for Compassionate Release* (ECF No. 50) (*Reply*).

## II.    THE PARTIES' POSITIONS

### A.    Mr. Doe's Second Motion for Compassionate Release

Mr. Doe argues that he is entitled to compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) because his "mother needs help with daily living activities." *Def.'s Mot.* at 3 (capitalization altered).  He explains that he "was a major caregiver for his mother prior to his arrest," and "[n]ow, with him being incarcerated, her condition is continuing to worsen."  *Id.*  His mother "has issues making it to doctor's appointments and the grocery store," and has had to rely on support from members of her church to accomplish basic tasks.  *Id.*

Mr. Doe attaches to his motion a letter from his seventy-four-year-old mother, L.D., who writes:

---

medical or psychological information that is "peripheral" and would only serve to "gratify public spite or promote public scandal" and information that is "necessary to the public's appreciation of the sentence imposed."  *Id.* at 63.

In its discussion of Mr. Doe's mother's medical information that Mr. Doe shared in support of his motion for compassionate release, the Court discusses only the information that is "necessary to the public's appreciation of the sentence imposed."  *See id.*  It strives not to include personally identifying information or medical history or conditions only "peripheral" to the present order.  *See id.*

[3]    Mr. Doe's reply was due on September 5, 2024, *see Resp. in Opp'n* (ECF No. 49), and yet he did not reply until September 23, 2024.  He did not request, and thus could not have been granted, an extension.  Although Mr. Doe submitted his reply past the deadline, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *MacDonald v. Cumberland Cnty. Sheriff*, No. 2:22-cv-00304-JAW, 2023 U.S. Dist. LEXIS 196607, at *5-6 (D. Me. Nov. 2, 2023) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citations omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court thus treats Mr. Doe's tardy reply as timely filed and part of the motion sequence in the present case.

> Before I fell on thanksgiving morning [of 2023] I was able to walk 2 miles a day. I could do housework—wash floors, vacuum, shovel snow, brush off my car[,] shovel my driveway and walkway . . .. After I fell, I experienced excruciating pain for 2 weeks . . .. At my last appointment [on] 5/14/24, my doctor referred me to physical therapy—and I am still unable to lug up groceries, laundry, or anything over 2 ½ pounds . . .. It's quite depressing not being able to do the things I was able to do before [my] November 23 [fall].

*Id.* at 3 (quoting *id.*, Attach. 2, *Letter from [L.D.]* (ECF No. 47-2) (*L.D. Letter*)). Mr. Doe also attached a letter from a longtime friend of his mother, Robert Watson, Jr., which states that "[d]ue to debilitating ailments and the passing of [L.D.]'s husband," there are numerous "everyday tasks that she can no longer perform." *Id.* (quoting *id.*, Attach. 3, *Letter from Robert Watson, Jr.* (ECF No. 47-3)).

Mr. Doe provides a list of the medications his mother is currently taking, which he says are "prescribed . . . to address her diagnosis of 'Increased body mass index; Depressive disorder; Hypertensive disorder; Lumbosacral spondylosis; Degeneration of lumbar intervertebral disc; Lumbar radiculopathy; [and] Myofascial pain." *Id.* at 4 (citing *id.*, Attach. 4, *Clinical Summary for [L.D.]* (ECF No. 47-4) (*L.D. Med. Recs.*). He adds that his mother suffers from "Lumbar stenosis with neurogenic claudication; chronic kidney disease, stage 3a; Stage 3 chronic renal impairment associated with type 2 diabetes mellitus with diabetic nephropathy; Edema, unspecified type; essential hypertension; and asthma." *Id.* (citing *L.D. Med. Recs.*). "All of this in addition to her advanced age (74) and constant pain make having a caregiver available at all times a necessity," claims Mr. Doe, explaining "she relies on sporadic assistance from distant family members, neighbors, and church members." *Id.*

Mr. Doe informs the Court that "[t]he real issue becomes one of time," because it is difficult for his mother to get to medical appointments "as she can't take her medication and drive as it makes her 'sleepy.'" *Id.* (quoting *L.D. Letter*). This, in turn, causes his mother "to skip medication and deal with pain, or not make it to a medical appointment." *Id.* He opines that a stay-at-home caregiver would prevent his mother from having to make this choice. *Id.*

Mr. Doe additionally informs the Court that his brother has his own family obligations, in addition to working full time, and thus is not available to be an around-the-clock caretaker for their mother; Mr. Doe claims he is the only one "who can provide his elderly mother with the care that she requires." *Id.* He insists the care offered by various friends and neighbors is an insufficient long-term solution. *Id.* at 4-5.

Mr. Doe tells the Court that, "[he], if released to home confinement at her residence, would be there to be that caretaker." *Id.* at 5. He argues that he is thus entitled to sentence reduction pursuant to United States Sentencing Guidelines (U.S.S.G.) § 1B1.13(b)(3)(C), which includes "the incapacitation of the defendant's parent when the defendant would be the only available caretaker for the parent." *Id.* He alternatively argues that if the Court concludes that his mother's condition "[does not] meet the 'incapacitation' definition," then he is entitled to sentence reduction under U.S.S.G. § 1B1.13(b)(5), which states that "the defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together . . . are similar in **gravity** to those described [above]." *Id.* (emphasis

added by Defendant).  Mr. Doe argues that his own "circumstance is clearly similar in gravity" and he thus presents extraordinary and compelling reasons for relief.  *Id.*

Turning to 18 U.S.C. § 3553(a), Mr. Doe begins by recognizing that an individual seeking sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) is also required to show that the § 3553(a) sentencing factors support release. *Id.* at 2 (citing *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021)).  He argues that the § 3553(a) factors "weigh in favor of release" in his case, reporting that he "has diligently worked to better himself during this term of incarceration," and availed himself of "every opportunity and responsibility even more so than the average inmate." *Id.* at 5.  He informs the Court that he "been a mentor for over 3 years for the Institution's SKILLS program for inmates with mental disorders such as autism," teaches card-making and runs workshops for his fellow inmates "to keep them out of trouble, provide them with productive activities for FSA purposes, [and] help them earn programming credits," and has worked as a Suicide Companion for over four years. *Id.* at 5-6.  He also reports that he has completed the nine-month intensive RESOLVE program, which is for inmates who have a history of trauma, reminding the Court "of the trauma that he faced during his childhood" and claiming "[t]his represents a substantial effort to address his issues." *Id.* at 6.  He has also completed Anger Management. *Id.*

Mr. Doe points out that he "has completed 66% of his sentence (78% if you include his good time calculation) and has maintained clear conduct for nearly 7 years," and avers that "an inmate's post-sentencing conduct provides the most up-to-

6

date picture of a person's history and characteristics under the § 3553(a) factors." *Id.* (citing *Pepper v. United States*, 562 U.S. 476, 492 (2011); *Concepcion v. United States*, 597 U.S. 481, 494-95 (2022)).

Mr. Doe concludes that he "has presented extraordinary and compelling circumstances based on the catch-all provision of the amended United States [Sentencing] Guidelines," and requests that the Court "reduce his sentence to time served and impose a special condition of 1 year home confinement to his supervised release conditions." *Id.* at 6-7.

## B.    The Government's Opposition

As an initial matter, the Government urges the Court to deny Mr. Doe's motion for compassionate release "relating to his alleged family situation" because "[t]he record provided by the defendant . . . shows that this ground was not addressed to the [BOP], and therefore the defendant has not exhausted his administrative remedies as to the relief requested." *Gov't's Opp'n* at 1.  Turning to the merits of Mr. Doe's motion, the Government further argues that the record Mr. Doe submitted "does not clearly establish a factual predicate for his requested relief, nor does it explain why reducing his below-guideline mandatory-minimum sentence of child pornography recidivist is appropriate under the 3553(a) factors." *Id.*

### 1.    Administrative Exhaustion

The Government argues that, pursuant to 18 U.S.C. § 3582(c)(1)(A), a court may reduce a sentence:

> upon motion of the defendant *after the defendant has fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons [BOP]

> to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

*Id.* at 5 (quoting 18 U.S.C. § 3582(c)(1)(A)) (emphasis added by the Government). The Government conveys that this requirement of administrative exhaustion is "mandatory unless waived or conceded by the government." *Id.* (citing *United States v. Doe*, No. 2:11-cr-00136-GZS, 2022 U.S. Dist. LEXIS 210135, at *4 (D. Me. Nov. 21, 2022). "To properly exhaust in accordance with 18 U.S.C. § 3582(c)(1)(A), 'an inmate is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the [district] court." *Id.* at 5-6 (citing *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021)).

Turning to the present case, the Government argues that the record establishes Mr. Doe "failed to exhaust his administrative remedies with BOP because he did not present BOP with the same or similar grounds for his claim to compassionate release." *Id.* at 6. The Government explains, "[t]he defendant's present motion is explicitly and wholly based on alleged need to care for his mother," *id.* at 4 (citing *Def.'s Mot.* at 1, 3-5); "[h]e states that this is due to a fall his mother suffered in November of 2023 . . .. But in claiming his exhaustion of administrative remedies, Mr. Doe points to a September 2023 request for reduction in sentence, and attaches a November 22, 2023 denial of the request from BOP." *Id.* (citing *Def.'s Mot.* at 1; *Def.'s Mot.*, Attach. 1, *Letter from R. Stover, Warden* (ECF No. 47-1) (Warden's Letter)). In the BOP's denial of Mr. Doe's request, the Government says, "it made clear that Doe's 2023 request was due to his own medical condition, and no mention

is made of his mother's condition." *Id.* (citing Warden's Letter). "This makes logical sense," the Government continues, "since both the request and denial were made before Doe's mother suffered her purported injuries, and long before the long-term implications of those injuries could have been known." *Id.* at 4-5.

The Government avers that the Court should deny Mr. Doe's motion for compassionate release on this procedural ground; however, in the event the Court disagrees, the Government continues to address the merits of Mr. Doe's motion. *See id.* at 6.

### 2.    Extraordinary and Compelling Reasons

The Government asserts that Mr. Doe has failed to establish that extraordinary and compelling reasons warrant a reduction of his sentence. *Id.* The Government accepts that a defendant's "family circumstances" may qualify as extraordinary and compelling reasons warranting sentence reduction, *id.* (citing U.S.S.G. § 1B1.13(b)(3)) but contends that this provision only makes an individual eligible for sentence reduction due to "the incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent" or another immediate family member. *Id.* at 6-7 (quoting U.S.S.G. § 1B1.13(b)(3)). The Government asserts Mr. Doe has failed to show that he is his mother's only available caretaker, *id.* at 6, 7, and the records Mr. Doe attached to his motion for compassionate release "do not establish that Doe's mother needs round-the-clock care, or that she is not able to get appropriate assistance through some other source, such as home-healthcare assistance agencies." *Id.* at 6. "Instead, he simply

disqualifies his brother and her neighbors, without any analysis of why no other form of assistance is available or sufficient." *Id.* at 7 (citing *United States v. Newman*, No. CR-122-031, 2024 U.S. Dist. LEXIS 33607, at *4 (S.D. Ga. Feb. 27, 2024) ("Yet again, Defendant provides no evidence that either his wife or his father is incapacitated or that Defendant is the *only* available caretaker.  His conclusory statements are insufficient to carry his burden of persuasion"); *United States v. Romano*, No. 22-cr-12 (KAM), 2023 U.S. Dist. LEXIS 226002, at *8 (E.D.N.Y. Dec. 19, 2023)).

Finally, the Government opines that Mr. Doe "fails to articulate why his mother should be deemed incapacitated within the meaning of the applicable rule." *Id.*  None of the records Mr. Doe provided the Court, the Government posits, "indicate that she is incapacitated, and that no improvement is expected." *Id.*

### 3.     Danger to the Community

The Government cautions the Court that the Defendant remains a danger to the community and argues that he has failed to meet his burden of showing that his release poses no threat to "the safety of any other person and the community." *Id.* at 7-8 (citing 18 U.S.C. § 3142(g)).

### 4.     18 U.S.C. § 3553(a) Factors

The Government first reminds the Court that it need not reach consideration of the 18 U.S.C. § 3553(a) factors if it concludes the defendant has not demonstrated an "extraordinary and compelling reason" warranting a reduction.  *Id.* at 8 (citing *Saccoccia*, 10 F.4th at 8 ("Though the section 3553(a) factors may serve as an independent basis for a district court's decision to deny a compassionate-release

motion," they "need only be addressed if the court finds an extraordinary and compelling reason favoring release")).   However, even if the Court does find extraordinary and compelling circumstances, the Government argues the § 3553(a) factors "all warrant a denial of the defendant's motion."  *Id.*

The Government avers that the Defendant's history and characteristics— "specifically his prior conviction in federal court for receipt of child pornography"— demonstrate the danger he poses to the community and weigh against early release. *See id.* at 8.  Turning to the nature and circumstances of the offense, the Government states that Mr. Doe possessed 7,947 image files depicting child pornography, "including files showing sexual abuse of minors by adult men, as well as obscene materials involving toddler-aged children."  *Id.*  The Government argues that the need to protect the public from future crimes by the Defendant weighs against reduction, as "[t]hese crimes involve children and a sexual interest in children that the defendant appears unwilling to attempt to control."  *Id.*  Turning to deterrence, the Government says that "[r]eleasing the defendant now would not sufficiently deter him, just as his initial three-year federal sentence . . . failed to deter the current crime of conviction.  He had been off supervised release a mere five years when he engaged in the course of conduct relating to his current conviction."  *Id.* at 9 (citing Revised Presentence Investigation Report (PSR) ¶¶ 5, 27).  Finally, the Government flags that "Congress has enacted a mandatory minimum sentence of 10 years for recidivists of the defendant's ilk," and "[t]he early termination of Mr. Doe's sentence would not adequately reflect the seriousness of his conduct and the danger it poses to the victim

11

children and the community at large[.]" *Id.*   The Government reminds the Court that "the defendant is a recidivist child-sexual abuse material offender who received a below-guideline mandatory-minimum sentence," such that early release would detract from both specific and general deterrence. *Id.*

### C.   Mr. Doe's Reply

In his reply, Mr. Doe reiterates his request for compassionate release, arguing that "the Government understates the severity of [his] mother's condition." *Reply* at 1 (capitalization altered).   He avers that the Government "ignores the numerous medical conditions and medications that [his] mother requires just to live day to day" and that she "is in constant pain." *Id.*   He says, "[t]o suggest that an elderly woman should not be provided with live-in care, when even doing things such as standing causes her severe pain, is an absurd notion."   *Id.* at 2.   Mr. Doe adds, "[t]he Government implies that she can pay for a home-healthcare aid and that the aid will be available daily for her.   This is simply not the case.   She needs more than health care[:] she needs a driver, a homecare aid, someone to help with sanitation, and the like." *Id.*   In response to the Government's contention that L.D. is not incapacitated because she is expected to improve, *id.* (citing *Gov't's Opp'n* at 7), Mr. Doe says "that isn't relevant to the inquiry" because the Sentencing Guidelines do not state that a parent must be incapacitated for an indefinite period and "there is no requirement that she has to have no expectation of any improvement." *Id.*   Mr. Doe thus concludes the Government has failed to disprove his claim of extraordinary and compelling reasons for his release.   *Id.*

Next, Mr. Doe disputes the Government's contention that his early release would pose a danger to the community. *Id.* at 3. Acknowledging that "his crime was indeed a very serious one," Mr. Doe asserts that he has served a majority of his sentence, is likely soon to be released to a halfway house, and has undertaken "extensive rehabilitation" while incarcerated. *Id.* He argues the monitoring by probation performed on home confinement would lower his recidivism risk in the same manner as a halfway house. *Id.*

Finally, Mr. Doe responds to the Government's argument regarding his failure to exhaust administrative remedies. *Id.* at 4. Mr. Doe concedes that the Government is correct that his request for administrative redress "was based on his health condition rather than his mother's condition," as he "had suffered a heart attack while in custody recently." *Id.* Mr. Doe explains that "he did not file a compassionate release motion at that time [of his heart attack] as he believed, on its own, that [this] wasn't an extraordinary and compelling [reason]" for early release and "he did not want to waste this Honorable Court's time[;] [h]owever, given his mother's recent diagnoses he felt the more pressing and urgent need to address his mother's time sensitive condition rather than his own small heart attack." *Id.*

Mr. Doe argues that he has sufficiently exhausted his administrative remedies in accordance with the U.S. Supreme Court's holding in *Sims v. Apfer*, 530 U.S. 103 (2003). *Id.* (citing *Sims*, 530 U.S. at 116) ("The Supreme Court . . . has warned against 'reflexively' applying issue exhaustion to judicial review of any agency decision," especially when the proceedings are inquisitorial rather than adversarial and "both

parties to the dispute lack representation")).  Analogizing the present case to *Sims*, Mr. Doe argues that "[i]ssue exhaustion is inappropriate because §[]3582 contains no such requirement and BOP compassionate release requests are not adversarial proceedings," nor do prisoners have an opportunity to make argument or seek representation.  *Id.*  Mr. Doe also cites cases from the Fourth and Third Circuits in support of his argument that he has sufficiently met his burden of exhausting administrative resources.  *See id.* (citing *United States v. Ferguson*, 55 F.4th 262, 269 (4th Cir. 2022); *United States v. Raia*, 459 F.3d 594, 597 (3d Cir. 2020)).[4]  Mr. Doe concludes that the Court should consider him to have fully exhausted his remedies in this case.  *Id.*

## III.  DISCUSSION

### A.    Administrative Exhaustion

Neither Mr. Doe nor the Government provides the Court with Mr. Doe's request to the BOP for compassionate release.  However, Mr. Doe attaches to his motion the response he received from Warden R. Stover on November 22, 2023 denying his request.  *Warden Letter*.  This denial states: "You requested a Reduction in Sentence (RIS) based on concerns related to being medically disabled.  After careful consideration, your request is denied."  *Id.*  In his reply submitted to the Court, Mr.

---

[4]    Mr. Doe also alleges that "[t]he Eighth and D.C. Circuits have held that the statutory exhaustion requirements are presumed to be non-jurisdictional, and thus waivable."  *Reply* at 5.  Mr. Doe's position on these points is consistent with First Circuit authority.  *See United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022); *United States v. Cain*, No. 1:16-cr-00103-JAW-1, 2021 U.S. Dist. LEXIS 20672, at *9-10 (D. Me. Feb. 3, 2021) ("[S]ection 3582(c)(1)(A)'s exhaustion requirement is a non-jurisdictional claim-processing rule"); *United States v. Whalen*, No. 1:11-cr-00033-JAW, 2020 U.S. Dist. LEXIS 118896, at *13 n.2, *17-18 (D. Me. July 7, 2020).

Doe confirms that the Government is correct that his request to the BOP was based on his own health conditions and not his mother's need for care. *Reply* at 4.

A court may consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *United States v. Hassan*, No. 2:16-cr-00084-JDL, 2020 U.S. Dist. LEXIS 195468, at *3 (D. Me. Oct. 21, 2020)). The First Circuit has called § 3582(c)(1)(A)'s exhaustion requirement "a non-jurisdictional claim-processing rule." *Texeira-Nieves*, 23 F.4th at 53. Administrative exhaustion is "mandatory unless waived or conceded by the Government." *United States v. Perez-Crisostomo*, 2023 U.S. Dist. LEXIS 96877, at *6 (D. Me. June 5, 2023) (citing *Hassan*, 2020 U.S. Dist. LEXIS 195468, at *3).

Here, Mr. Doe's motion for compassionate release raises novel issues he failed to present to the BOP, namely because they had not yet occurred. In his motion, Mr. Doe exclusively discusses his mother's need for care to address her medical diagnoses and her increasing need for more support with daily tasks as she ages. *Def.'s Mot.* at 1, 3-5. Although the Court does not have access to Mr. Doe's request for BOP review, the BOP's denial of his request indicates that the sole basis for Mr. Doe's administrative request was his own medical conditions; Mr. Doe confirmed this fact in his reply. *Warden Letter*; *Reply* at 4. Thus, the BOP did not respond to the specific

15

issues Mr. Doe now presses regarding his mother's care, nor could the BOP have responded to these issues because Mr. Doe did not raise them.[5]

The First Circuit has not resolved whether a defendant should be barred from proceeding with a motion for compassionate release if he failed to raise with the BOP the same issues he is presenting to the district court. *United States v. Waite*, No. 2:18-cr-00113-GZS, 2022 U.S. Dist. LEXIS 133073, at *5 (D. Me. Jul. 27, 2022) ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit"); *accord Texeira-Nieves*, 23 F.4th at 53 ("The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty—but we need not resolve that question today").

Other circuit courts of appeal have resolved this issue. For example, in 2021 the Seventh Circuit ruled that to proceed with a motion for compassionate release in a district court, a defendant "is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *Williams*, 987 F.3d at 703; *accord United States v. Gieswein*, 832 Fed. Appx. 576, 578 (10th Cir. 2021). Yet other circuit courts have disagreed, holding that § 3582(c)(1)(A)

---

[5]     In support of his argument that he has sufficiently exhausted his administrative remedies, Mr. Doe cites *Sims*, 530 U.S. 103. The Court reviewed *Sims* and notes that it involved different agency regulations than the case at bar.  In *Sims*, the Supreme Court explained that an individual whose claim for Social Security benefits is denied by an administrative law judge must, before seeking judicial review of that denial, request that the Social Security Appeals Council review his claim.  *Id.* at 104. The question presented in *Sims* was "whether a claimant pursuing judicial review has waived any issues that he did not include in that request"; the Supreme Court concluded that he has not.  *Id.*

The Supreme Court's holding in *Sims* does not control this Court's determination of the present case because it involved a request for Social Security benefits, and not a request for compassionate release from a sentence of incarceration.

does not require issue exhaustion and the Supreme Court has not yet addressed the issue and concluded otherwise. *See, e.g.*, *United States v. Ferguson*, 55 F.4th 262, 2022 U.S. App. LEXIS 32841 (4th Cir. 2022), cert. denied, 144 S. Ct. 1007 (2024) (holding the "[d]istrict court erred when it concluded that it could not consider defendant's non-medical arguments with respect to his motion for compassionate release due because he did not raise them in request for compassionate release made to [BOP] because 18 U.S.C.S § 3582(c)(1)(A) did not require issue exhaustion").

If issue exhaustion applies to motions for compassionate release in the First Circuit, this Court would be forced to bar Mr. Doe's motion for compassionate release for failure to "fully exhaust[]" his administrative remedies.  18 U.S.C. § 3582(c)(1)(A). Mr. Doe's claim for compassionate release boils down to his mother's need for a caretaker to address her medical conditions and support her as she ages.  But, as discussed, Mr. Doe failed to raise these issues before the BOP.  As the Seventh Circuit wrote in *Williams*, the purpose of the exhaustion requirement is "to afford prisons an opportunity to address issues before they are brought to the federal court."  987 F.3d at 703.  Here, Mr. Doe does not dispute that he never presented the BOP with the family circumstances he is now raising before the Court and thus did not afford the BOP the opportunity to consider them.  *See* 18 U.S.C. § 3582(c)(1)(A).  However, as the applicability of issue exhaustion to § 3582(c)(1)(A) remains an open question in the First Circuit, it seems wiser for the Court to address the merits of Mr. Doe's motion.  If the First Circuit were to rule that issue exhaustion does not apply to motions for compassionate release, the Court would have denied Mr. Doe a ruling on

the merits.  As the result is the same, the Court now turns to the merits of Mr. Doe's motion.

## B.   18 U.S.C. § 3553(a) Factors

To reduce a sentence, the Court must find that "extraordinary and compelling reasons warrant" the movant's sentence reduction after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable.   18 U.S.C. § 3582(c)(1)(A)(i); *accord Texeira-Nieves*, 23 F.4th at 52 ("Next, the district court must consider any applicable 3553(a) factors and 'determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case'") (quoting *Saccocia*, 10 F.4th at 4).  18 U.S.C. § 3582(c)(1)(A) also requires any sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(ii).[6]

The Court, then, must begin by considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable.  These factors are: "(1) the nature and

---

[6]   In *United States v. Rivera-Rodríguez*, 75 F.4th 1 (1st Cir. 2023), the First Circuit noted that its caselaw had "clarified that, because (up until recently) the Commission had not issued any policy statements applicable to the prisoner-initiated motions for compassionate release, district courts 'ha[d] discretion, unconstrained by any policy statement currently in effect, to consider whether a prisoner's particular reasons are sufficiently extraordinary and compelling to warrant compassionate release.'" *Id.* at 18 n.22 (quoting *United States v. Ruvalcaba*, 26 F.4th 14, 23 (1st Cir. 2022)).

In the time since, however, "the Sentencing Commission has promulgated new guidelines relevant for compassionate release motions, which we expect district courts to take heed of when determining whether an individual meets the statute's requirements for such relief."  *Id.* (citing Amendments to the Sentencing Guidelines, U.S. Sentencing Commission (Apr. 27, 2023), https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023).

The Court takes heed of this change.  The Court notes the most recent amendment revises U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A).  Given this amendment, the policy statement is now applicable to both defendant- and BOP-filed motions and consequently will be considered in this defendant-initiated motion.

circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense . . . ," "to afford adequate deterrence," "to protect the public from further crimes," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment"; (3) "the kinds of sentences available"; (4) "the kinds of sentencing and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines"; (5) "any pertinent policy statement"; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims in the offense."  18 U.S.C. § 3553(a)(1)-(7).

The Court considered the § 3553(a) factors at length in its order on Mr. Doe's first motion for compassionate release.  *See Order on First Compassionate Release Mot.* at 22-26.  At that time, the Court noted that it had previously considered these factors at sentencing and affirmed its prior conclusion that Mr. Doe's one-hundred and twenty-month sentence is "sufficient but not greater than necessary" to achieve the purposes of the law.  *Id.* at 25 (quoting 18 U.S.C. § 3553(a)).  The Court noted in its order that it had sentenced Mr. Doe to the ten-year mandatory minimum, which Congress enacted for recidivist child pornography offenders under 18 U.S.C. § 2252A(b)(2).  *Id.*  The Court's decision to apply the mandatory minimum in Mr. Doe's case resulted in a one-month downward variance from his one-hundred-twenty-one-

month to one-hundred-fifty-month Guidelines range. *Id.* The Court concluded that reducing Mr. Doe's sentence would undermine the mandatory minimum's deterrent effect, and continued incarceration would more effectively deter Mr. Doe from future criminal behavior after his eventual release. *Id.* at 26. The Court also noted its concern of the effect Mr. Doe's early release could have on the general deterrence of others potentially inclined to similar criminal conduct. *Id.*

In the Court's order on Mr. Doe's first compassionate release motion, it emphasized the gravity of the Defendant's criminal history, the nature and circumstances of the offense, and the continued danger he posed to the public. The Court observed that during Mr. Doe's most recent offense, he possessed nearly 8,000 images of child pornography; most depicted girls younger than age twelve. *Id.* at 22. When apprehended by law enforcement, he initially attempted to obfuscate his crime by telling officers that he had accidentally received the illicit images while searching for scantily clad images of a teenaged model. *Id.* at 22-23. Mr. Doe eventually admitted that he knew his actions and impulses were criminal because he knew some of his victims' ages. *Id.* at 23. He further admitted that he did not seek help or counseling because he did not want to incriminate himself. *Id.* The Court found Mr. Doe's admissions troubling because much of his past criminal conduct occurred in secret and concluded that, because he has been reluctant to seek help controlling his criminal urges in past, continued incarceration may be the only viable means to protect the public from him committing future crimes. *Id.* The Court also emphasized

that his prior criminal history shows that he harbors a long-standing and often uncontrolled prurient interest in children, and women, as sexual objects. *Id.*

The Court again reviewed Mr. Doe's criminal history in considering this motion. What stands out is that Mr. Doe's most frequent victims—children, including toddlers—are among the most vulnerable members of our society. Mr. Doe asks the Court to grant him compassionate release, but his criminal history shows a substantial and grave lack of compassion for children. In investigating the conduct that led to Mr. Doe's current sentence, law enforcement conducted a warranted search of the Defendant's computer; the majority of files they found on his computer "depicted the sexual exploitation of prepubescent females appearing under the age of 12." PSR ¶¶ 4, 5. A forensic analysis of Mr. Doe's laptop also revealed that he "frequently searched for 'jailbait' related material on Motherless.com and other websites, and on 12/21/2013, he conducted several searches using the terms 'ns4w' and 'cheese pizza,' which authorities have learned from other investigations are acronyms for 'not safe for work' and 'child pornography'." *Id.* ¶ 5. In preparing the PSR, the Probation Office reviewed a representative sample of the 7,947 image files depicting child pornography and determined that:

> The majority of the images involved prepubescent minors and <u>contained material that portrayed sadistic or masochistic conduct, or other depictions of violence, including but not limited to vaginal penetration of prepubescent females by adult male penises, anal penetration of prepubescent minors by foreign objects, and prepubescent minors in bondage. Some of the images appeared to involve toddlers</u>.

*Id.* ¶ 6 (emphasis in original). Moreover, this was not Mr. Doe's first offense involving child pornography: in 2002, the Court sentenced Mr. Doe for receipt of child

pornography, for which he received a thirty-three-month sentence. *Id.* ¶ 27.  In law enforcement's investigation of that offense, a forensic examination of Mr. Doe's computer revealed at least 1,192 images of child pornography, "including images of children between the ages of three and seven years old engaged in sexually explicit acts, images of children under the age of three engaged in sexual intercourse, and children between the ages of three and seven years old engaged in bondage." *Id.*  Mr. Doe's prior offenses also includes a 364-day sentence in 2005 for violation of privacy. *Id.* ¶ 28.  This charge involved the Defendant's alarming invasion of women's privacy, including the privacy of his then-wife.  *Id.*

Mr. Doe's criminal history and his earlier offenses show that he is a repeat offender, who represents a threat to the most vulnerable members of our society, children, who rely on others to protect them because they cannot protect themselves from predators like Mr. Doe.  His criminal history also shows that he exploits women, including his then-wife, and abuses their trust and invades their privacy to his own ends.  The Court recognizes and credits the efforts that Mr. Doe has made at rehabilitation in prison and recommends to Mr. Doe that he continue these efforts as they will help him reintegrate as a productive member of society when he is released from BOP custody.  However, in his motion, Mr. Doe has not met his burden to show that he is no longer a danger to the community.   The Court agrees with the Government's assessment that the Defendant's criminal history is serious and substantial, and that, "[d]espite his prior conviction and incarceration, the defendant committed the same crime against children in this case." *Gov't's Opp'n* at 8.  The

Court considered all of the § 3553(a) factors in sentencing and its order on Mr. Doe's first motion for compassionate release; Mr. Doe has not presented the Court with sufficient evidence to allow it to come to a different conclusion on his present motion. Altogether, the Court agrees with the Government that the § 3553(a) factors "all warrant a denial of the defendant's motion." *Id.*

## C.     Extraordinary and Compelling Reasons

To grant Mr. Doe's petition under 18 U.S.C. § 3582(c)(1)(A)(i), the Court must find "extraordinary and compelling reasons warrant[ing]" a reduction in sentence. U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).[7]   To aid courts in this determination, the United States Sentencing Commission issued a policy statement offering six categories for a sentence reduction: the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence."  U.S.S.G. § 1B1.13(b).

The movant bears the burden of showing entitlement to a sentence reduction, and "the Court 'has broad discretion in deciding whether to grant or deny a motion

---

[7]     On April 5, 2023, the United States Sentencing Commission submitted Amendment 814 to Congress, as a response to the First Step Act of 2018, 18 U.S.C. § 3582(c)(1)(A), which permits criminal defendants to file motions for sentence reduction directly, as opposed to such motions being permitted only from the Bureau of Prisons; this amendment became effective on November 1, 2023.  *See U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814.  Among other things, Amendment 814 revised the list of "extraordinary and compelling reasons" that may warrant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A).  *See* U.S.S.G. § 1B1.13(b) (Nov. 1, 2023) (listing extraordinary and compelling reasons); *see also U.S. Sentencing Comm'n, Guidelines Manual*, App. C Supp., Amend. 814, Reason for Amend. at 206 ("The amendment expands the list of specified extraordinary and compelling reasons and retains the 'other reasons' basis").

for sentence reduction.'" *United States v. Curtis*, No. 1:14-cr-00140-JAW, 2020 U.S. Dist. LEXIS 102045, at *12 (D. Me. June 11, 2020) (quoting *United States v. Britton*, No. 18-cr-108-LM, 2020 U.S. Dist. LEXIS 83396, at *4 (D.N.H. May 12, 2020) (internal citation omitted)).

### 1.     Section 1B1.13(b)(3)(C): Family Circumstances

Mr. Barnard asserts that he is entitled to sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(3)(C), which states that extraordinary and compelling reasons may exist due to "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." The U.S. Sentencing Commission does not define "incapacitation" in the context of compassionate release. *See* U.S.S.G. § 1B1.13.

Some district courts reviewing motions for compassionate release pursuant to U.S.S.G. § 1B1.13(b)(3)(C) have followed the First Circuit's broad directive that courts determining whether the reasons advanced by the defendant are extraordinary and compelling should be "guided by the plain meaning of those terms." *See United States v. Canales-Ramos*, 19 F.4th 561, 566 (1st Cir. 2021). "The plain meaning of 'extraordinary' suggests that a qualifying reason must be a reason that is beyond the mine-run either in fact or in degree . . .. By the same token, the plain meaning of 'compelling' suggests that a qualifying reason must be a reason that is both powerful and convincing." *Id.* The District of Puerto Rico took this approach in *United States v. Idrobo-Victoria*, Criminal No. 20-451 (SCC)(HRV), 2024 U.S. Dist. LEXIS 92260 (D.P.R. May 17, 2024), ruling that a defendant seeking compassionate release

24

pursuant to U.S.S.G. § 1B1.13(b)(3)(C) on the basis that the "[d]efendant's parents are elderly, and in need of the defendant's daily assistance due to their medical conditions," *id.* at \*2, had shown neither that his parents were "incapacitated" nor that he was the "only available caregiver" for either of them.  *Id.* at \*7-8.  On the question of incapacity, the district court noted that the defendant's parents were "receiving medical treatment for several conditions, including cancer (his father)," *id.* at \*7, but concluded that "[s]ome of the medical records provided are a year old or older, and they do not clearly establish the severity, status, or prognosis of the medical conditions.  Certainly, the records do not establish that either of the defendant's parents are incapacitated."  *Id.* at \*8.

In the absence of specific guidance from the U.S.S.G., other district courts across the country have looked to the BOP's non-binding Program Statement for guidance on processing compassionate release requests.  *See, e.g., United States v. White*, 2021 U.S. Dist. LEXIS 83038, at \*4 (E.D. La. Apr. 30, 2021) (citing Federal Bureau of Prisons Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10; *United States v. Bolden*, No. 16-320, 2020 U.S. Dist. LEXIS 132716, at \*4 (W.D. Wash. July 27, 2020) (looking to the BOP's relevant Program Statement for guidance); *United States v. Doolittle*, No. 19-501, 2020 U.S. Dist. LEXIS 127801, at \*2 (D.N.J. July 21, 2020) (same); *United States v. Collins*, No. 15-10188, 2020 U.S. Dist. LEXIS 5001, at \*4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well")).

25

The BOP's Program Statement provides two definitions for the word "incapacitation." First, as to "the caregiver of the defendant's minor child or minor children," the Program Statement provides: "'incapacitation' means the family member caregiver suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP, Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 7, 10 (BOP Program Statement § 5050.50). Second, as to "[t]he incapacitation of the defendant's spouse or registered partner," the Program Statement says:

> 'incapacitation' means the inmate's spouse or registered partner has: [s]uffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or [a] severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

*Id.* at 10.

Here, Mr. Doe attaches his mother's medical records from clinical visits on February 29, 2024, March 4, 2024, and May 14, 2024. *See* L.D. Med. Recs. These records confirm that on February 29, 2024, L.D. was seen for lumbar stenosis with neurogenic claudication, stage 3A chronic kidney disease, stage 3 chronic renal impairment associated with type 2 diabetes mellitus, and edema of an unspecified type. *Id.* at 2. The record shows that, at the visit, the doctor changed L.D.'s medications, took her temperature (98.2 degrees), took her pulse ("regular"), and logged her weight. *Id.* The records show that L.D. was seen for "bilateral back pain

26

with lower extremity radiation" on March 4, 2024. *Id.* at 4. The treating medical provider wrote:

> [L.D.], a 74-year-old female, presents with bilateral back pain and left-sided pain radiating into the leg, which began three months ago following a fall. She describes the pain as burning in quality, with a current pain scale of 6 out of 10 and a maximum of 8 out of 10 in the last 24 hours. [L.D.] reports that the pain worsens when sitting, transitioning from sitting to standing, transferring, bending, walking, and pressing on the affected area. She finds relief by stopping or changing activity, changing position, resting, or pressing on the affected area. The pain has adversely affected her mobility, bathing, dressing, and toileting.

*Id.* at 6.

Mr. Doe's submitted medical records also show that his mother visited a doctor for diabetes follow up and chronic lumbar pain on May 14, 2024, and that the doctor restarted L.D. on an oral medication and changed the prescription for another medication. *Id.* at 3. L.D.'s temperature was 98.3 degrees and her pulse was "regular." *Id.*

After carefully reviewing L.D.'s medical records, and the information Mr. Doe provided regarding his mother's conditions in his motion for compassionate release, the Court finds that Mr. Doe has not met his burden or showing that his mother is "incapacitated," under either the "plain meaning" of that term, *see Canales-Ramos*, 19 F.4th at 566, or the definitions provided by the BOP. *See* BOP Program Statement § 5050.50. While the Court finds that Mr. Doe has shown that his mother certainly has conditions it could conclude are "serious," he has not shown that his mother is "completely disabled, meaning that the [relative] cannot carry on any self-care and is totally confined to a bed or chair." *See id.* at 10. Mr. Doe has also not argued, or

27

submitted medical records which show, that his mother's "severe injury" or "severe illness" "renders [her] [a] caregiver incapable of caring for [a] child." *See id.* at 7, 10.

Although the Court could end its inquiry here, it also concludes that, even if it were to find that Mr. Doe had shown his mother was "incapacitated," Mr. Doe has failed to provide sufficient information to allow the Court to conclude that he is the "only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). *See United States v. Mackenzie*, 458 F. Supp. 3d 53, 55 (D. Mass. 2020) (no extraordinary and compelling reasons existed because there was no indication that defendant was the only available caretaker of his grandson); *see also Taveras*, 2024 U.S. Dist. LEXIS 67198, at *13 (denying compassionate release because even if the medical conditions of defendant's mother rendered her incapacitated, defendant was not her only available caregiver)). In *Idrobo-Victoria*, the district court found the defendant had not shown he was the only available caretaker for his two parents where "[t]he record reveals that the defendant has two siblings that live in . . . the same city where his parents live . . .. [and] there is nothing submitted to show that [his] siblings cannot care for their parents." *Idrobo-Victoria*, 2024 U.S. Dist. LEXIS 92260, at *8-9.

Here, the Court credits Mr. Doe's report that his brother, while living proximately to their mother, is unable to serve as a full-term caregiver because he is employed and has a family of his own, and that while members of L.D.'s congregation, as well as other friends and neighbors, periodically stop in to check on her, they are also unable to provide around-the-clock care. Although the Court is sympathetic to L.D., and Mr. Doe on her behalf, it concludes that he has not provided sufficient

information to allow the Court to find that no one, other than Mr. Doe, is capable of providing for his mother.

In sentencing individuals, the Court acknowledges that it never sentences the defendant alone, but that its sentencing decisions affect defendants' families, coworkers, and friends. When defendants are incarcerated, it places a heavy burden on the members of their family and community to fill their shoes and assist with family caregiving responsibilities. These consequences are, unfortunately, the reality of incarceration and the Court does not take this broader impact lightly. That said, this is the reality for all incarcerated defendants and thus not an "extraordinary" reason warranting early release in Mr. Doe's case.

The Court concludes that Mr. Doe has not shown "extraordinary and compelling reasons" for sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(3)(C).

### 2.      Section 1B1.13(b)(5): Other Reasons

Alternatively, Mr. Doe asserts that he is entitled to sentence reduction pursuant to U.S.S.G. § 1B1.13(b)(5), the "other reasons" category: "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Def.'s Mot.* at 5. The "other extraordinary and compelling reasons should be comparable or analogous to what the [U.S. Sentencing] Commission has already articulated as criteria for compassionate release." *United States v. Nelson*, No. 2:16-cr-00060-DBH-1, 2020 U.S. Dist. LEXIS 244655, at *8 (D. Me. Dec. 30, 2020) (citing

*United States v. Fox*, 2:14-cr-03-DBH, 2019 U.S. Dist. LEXIS 115388, at *3 (D. Me. July 11, 2019)).

The Court concludes that Mr. Doe has not met his burden of showing he is entitled to compassionate release pursuant to U.S.S.G. § 1B1.13(b)(5). Mr. Doe argues that his own "circumstance is clearly similar in gravity," and thus "he presents extraordinary and compelling reasons for relief." *Def.'s Mot.* at 5. However, the Court finds it dispositive that the Sentencing Commission expressly considered the circumstances under which a court may find that a defendant's family circumstances presented "extraordinary and compelling reasons." *See* U.S.S.G. § 1B1.13(b)(3). In terms of a defendant's parent, the Sentencing Commission instructs that these reasons exist where "[t]he incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent." *See* U.S.S.G. § 1B1.13(b)(3)(C). As discussed above, the Court does not find that Mr. Doe has shown "extraordinary and compelling reasons" pursuant to § 1B1.13(b)(3)(C). Despite his conclusory assertions, Mr. Doe has not explained to the Court why his "circumstance is clearly similar in gravity," and why the Court should take a broader view of § 1B1.13(b)(3)(C) than the Sentencing Commission did.

In sum, the Court concludes that Mr. Doe has not shown "extraordinary and compelling reasons" demonstrating that he is entitled to compassionate release pursuant to U.S.S.G. § 1B1.13(b)(3)(C) or U.S.S.G. § 1B1.13(b)(5).

## IV.    CONCLUSION

The Court DISMISSES Darin Doe's Motion for Compassionate Release (ECF No. 47) without prejudice.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 12th day of November, 2024